IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHANIE HEIZMANN AUERBACH,<br><br>Defendant. | Case No. 3:13-mj-00250-DMS |

### AFFIDAVIT IN SUPPORT OF
### CRIMINAL COMPLAINT

I, BENJAMIN HALLOWELL, being duly sworn, hereby depose and state the following:

#### Introduction and Affiant's Background

1. I am a Special Agent (SA) of the United States Department of Justice, Federal Bureau of Investigation (FBI). I have been so employed for approximately eight months. I am currently assigned to the FBI Cyber Squad, Anchorage Field Division. As part of my official duties, I investigate violations of United States federal law.

2. I make this affidavit in support of a criminal complaint charging STEPHANIE HEIZMANN AUERBACH for Interference with Flight Crew Members and Attendants in violation of Title 49, United States Code, Section 46504.

3. The evidence, set forth more fully below, provides probable cause to believe that on or about August 18, 2013, onboard Delta Airlines Flight 181, an aircraft in the special aircraft jurisdiction of the United States traveling from Detroit, Michigan, to Shanghai, China, AUERBACH did knowingly interfere with the performance of the duties of the aircraft's flight crew members and attendants, and lessen the ability of the members and attendants to perform those duties, by intimidating flight attendants and flight crew members. The aircraft's Captain determined that it was not safe to continue the flight with AUERBACH onboard and diverted the flight to Ted Stevens Anchorage International Airport, Anchorage, Alaska.

4. The facts set forth in this affidavit are based on my personal knowledge; knowledge obtained from other individuals, including other law enforcement officers; interviews of persons with knowledge; my review of documents, interview reports and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.

This affidavit contains information necessary to support probable cause for the criminal complaint and does not contain every material fact that I have learned during the course of this investigation; however, no information known to me that would tend to negate probable cause has been withheld from this affidavit.

## Investigation

5. On or about August 18, 2013, STEPHANIE HEIZMAN AUERBACH was a passenger seated in 1A onboard Delta Airlines Flight 181, a non-stop flight originating in Detroit, Michigan, and scheduled to land in Shanghai, China.

6. Approximately 60 to 90 minutes after Flight 181 departed Detroit, Michigan, passenger W.W. observed AUERBACH talking loudly, making gestures, walking up and down the aisle, and climbing over seats/partitions.

7. Flight attendant M.B. observed AUERBACH yelling profanities while walking in the aircraft's aisle. M.B. repeatedly asked AUERBACH to return to her (AUERBACH's) assigned seat while the fasten seat belt sign was on. At least twice, M.B. had to suspend M.B.'s normal duties to escort AUERBACH back to AUERBACH's assigned seat.

8. M.B. had served AUERBACH five glasses of white wine. In addition, three passengers seated near AUERBACH in 2A, 2B, and 3B, later told M.B. that they observed AUERBACH taking and consuming alcoholic beverages from the galley without the knowledge of the flight crew.

9. AUERBACH's loud use of profanities awoke passenger K.A. and K.A. observed AUERBACH on five occasions refuse instructions by flight attendants to return to her (AUERBACH's) assigned seat. K.A. stated that although flight attendants remained calm, AUERBACH screamed profanities.

10. AUERBACH spilled alcohol on passenger A.J. and grabbed A.J.'s wrist to place a bracelet on A.J. A.J. declined to wear the bracelet and asked AUERBACH to leave her (A.J.) alone. In response, AUERBACH swore at A.J. and demanded that a flight attendant give her (AUERBACH) A.J.'s name. A flight attendant intervened and returned AUERBACH to AUERBACH's assigned seat. AUERBACH alarmed A.J. and it appeared to A.J. that AUERBACH was attempting to gain access to the pilot.

11. Flight attendant P.B. had to suspend normal duties to warn AUERBACH three times and provided a written notice of violation to AUERBACH. The violation was for failure to follow instruction given by a crew member regarding compliance with passenger safety. In response, AUERBACH threw and hit P.B. with the notice. When P.B. was sitting in a jump seat, AUERBACH approached P.B., moved close to P.B.'s face, and asked P.B. about being taken "off this fucking flight." P.B. became afraid of AUERBACH and reacted by moving away from AUERBACH by leaving the flight crew jump seat.

12. W.R., a pilot and the Captain of Flight 181, responded to a cabin crew member's report of AUERBACH's interference with the performance of the cabin crew's duties by speaking with AUERBACH at length. After W.R. warned AUERBACH, W.R. asked AUERBACH if AUERBACH would follow the uniformed flight crew instructions and AUERBACH responded no and that she (AUERBACH) did have to follow instructions. W.R. thereafter diverted Flight 181 to Anchorage, Alaska, after burning off and/or dumping fuel.

13. After landing at Ted Stevens Anchorage International Airport, AUERBACH remained uncooperative. Airport Police Officers had to board the aircraft to remove AUERBACH who was detained until the arrival of the FBI Duty Agent, Special Agent BRIAN C. COY.

14. AUERBACH was physically combative with the Airport Police Officers and the odor of alcohol was smelled by Airport Police Officers and SA COY on AUERBACH's person when in AUERBACH's presence.

15. AUERBACH was not interviewed due to her (AUERBACH 's) physical and emotional condition, but Airport Police Officers and Agent Coy did speak with AUERBACH to obtain information regarding her (AUERBACH's) personal health.

16. AUERBACH was thereafter transported to the East Anchorage Detention facility. During the intake process, AUERBACH was given a breathalyzer inhaler/tester by the Detention Facility Nurse. The nurse stated that AUERBACH's Blood Alcohol Content was .102.

17. AUERBACH was traveling with two children. Both of the children were allowed to continue the flight to Shanghai, China, on the condition that the children's father pick-up the children at the airport in Shanghai, China.

## Conclusion

18. Based upon the foregoing, your affiant respectfully submits that there is probable cause to believe that STEPHANIE HEIZMAN AUERBACH committed the crime of Crime Aboard Aircraft, Interference with Flight Crew, a violation of Title 49, United States Code, Section 46504.

/s/ Signature Redacted
BENJAMIN HALLE
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
This 20th day of August, 2013

/s/ John D. Roberts, USMJ
Signature Redacted

United States Magistrate Judge